UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JOSE RODRIGUES DE REZENDE,<br><br>     Defendant. | Criminal Action No. 05-10054-PBS |

**SENTENCING MEMORANDUM**

Jose Rodrigues de Rezende is a Brazilian national who was arrested and taken into federal custody on February 23, 2005. Later that same day, Immigration and Customs Enforcement ("ICE") lodged a deportation detainer against Mr. de Rezende, and a criminal complaint issued charging him with knowingly possessing a document-making implement with intent to use the implement in the production of a false identification document in violation of 18 U.S.C. § 1028(a)(5). Mr. de Rezende subsequently pled guilty before this Court to an Information charging him with the same violation of § 1028(a)(5). He is scheduled to be sentenced tomorrow, April 6, 2005. ICE intends to deport Mr. de Rezende to Brazil as soon as he completes the sentence of incarceration, if any, that this Court imposes.

As of the date of sentencing, Mr. de Rezende will have been incarcerated in federal custody for exactly six weeks. He should not be required to spend any additional time in prison. At sentencing, Mr. de Rezende will request a sentence of:

- A term of incarceration of "time served";

- No fine, as he is indigent and therefore not able to pay any fine, even with the use of a reasonable installment schedule;

- Prompt release to his ICE detainer for purposes of deportation, accompanied by a judicial order of removal from the United States pursuant to 8 U.S.C. § 1228(c);[1]

- A term of supervised release of two years, with a special condition that Mr. de Rezende not return illegally to the United States after deportation;

- Payment of a mandatory special assessment of $100.

Pursuant to 18 U.S.C. § 3553(a), this Court must "impose a sentence sufficient, but not greater than necessary" to comply with the purposes of sentencing. Here, a sentence of time served combined with prompt deportation would provide a more than sufficient sentence.

Mr. de Rezende is a kind, gentle, generous man, with no prior criminal record whatsoever. Prior to his arrest in this matter, he had never previously been arrested and had never spent even a minute in prison. The crime to which he has pled guilty is a simple possession offense. He possessed software used to make false identification documents. He has not been accused, let alone pled or been found guilty, of trafficking in false identification documents. The offense of conviction, which is a naturalization offense, did not involve smuggling, transporting, or harboring unlawful aliens. The offense harmed no one. There were no victims, and Mr. de Rezende received no profit from the crime. The two other individuals who were arrested alongside Mr. de Rezende have not even been charged for the offense. One has been charged with other offenses and the other has simply been deported without any criminal charges having been lodged.

Mr. de Rezende has already spent weeks in prison and he will be deported as soon as he completes his sentence. His arrest and incarceration have already caused him great shame and

---

[1] This Court has jurisdiction to enter a judicial order of removal under 8 U.S.C. § 1228(c)(5) provided: (i) defendant waives his right to notice and hearing concerning removal; and (ii) defendant and the United States Attorney stipulate to the entry of a judicial order of removal "as a condition of the plea agreement or as a condition of probation or supervised release, or both." Here, Mr. de Rezende is prepared to waive his right to notice and hearing concerning removal. In addition, AUSA Paul Moore has represented that the government shall stipulate to the entry of a judical order of removal, with the understanding that the order shall enter following the completion by Mr. de Rezende of the sentence of incarceration, if any, imposed by the Court.

2

humiliation, and his deportation will mean the end of his dream of providing a better life for his young family in Brazil, and of possibly one day lawfully bringing his family to the United States. Furthermore, Mr. de Rezende fully understands that should he ever return to the United States, let alone commit another crime within the United States, he would face significant jail time. *See, e.g.*, 8 U.S.C. § 1326 (re-entry of alien whose removal was subsequent to a felony conviction is punishable by up to 10 years imprisonment); U.S.S.G. §§ 2L2.1(b)(4) and 2L2.2(b)(1) & (2). Under these circumstances, a sentence of time served combined with deportation would more than adequately fulfill all the purposes of sentencing. The recommended sentence would constitute sufficient punishment for the offense of conviction, while at the same time promoting respect for law, and serving society's interests in deterrence, protection of the public and rehabilitation of the defendant. It would be a fair and just sentence. Anything more would be gratuitous, wholly unnecessary, and needlessly costly to the taxpayers.

## BACKGROUND

Mr. de Rezende is a sweetheart of a person. He is an intelligent, caring and humble man, with a quick wit, an easy smile, and a wonderful sense of humor. To meet him is to like him. He is not a criminal. Indeed, prior to his arrest and guilty plea in this matter, he had never previously been arrested or incarcerated. [PSR, ¶¶ (43)–(47).]

Mr. de Rezende was born and raised in Brazil. As a child, he overcame a serious heart ailment. And as an adult he has always been gainfully employed. He is married and has a twelve year old daughter named Iolanda. Both his wife and daughter are in Brazil. Mr. de Rezende is the family's sole provider. Indeed, he came to the United States at great personal risk and expense for the sole purpose of better providing for his young family back home. For Mr. de Rezende, as for so many others in South America, even relatively menial jobs

3

in the U.S. afford the prospect of a better living than skilled jobs at home.  [*Id.*, ¶¶ (57)-(60), (64), (66).]

Since arriving in the U.S. in or about September 2003, Mr. de Rezende has worked hard to help his family and to better himself.  He has worked jobs, sometimes two at a time, at MacDonald's, Dunkin Donuts, and an amusement park.  He has taken English language courses, and he was ready to do volunteer work at a local hospital when he was arrested.  Virtually everyone with whom Mr. de Rezende has worked has found him to be a delight and a diligent worker with a terrific work ethic.  At Dunkin Donuts, he was promoted to the position of Shift Leader after little time on the job, and even though his employer is aware of Mr. de Rezende's current legal difficulties, he would still "consider re-employing the defendant."  [PSR, ¶ (77).] Likewise, Mr. de Rezende's English instructors have called him "an asset to the class," and a "model student."  They "want him back!"  [*Id.*, ¶¶ (75)-(75B).]  Mr. de Rezende has worked hard, not with the idea of beating the system, but with his eye consistently on the ball of helping his family back in Brazil.  Indeed, since his arrival in the States, Mr. de Rezende has sent money home on a weekly basis to support his wife and daughter and to save enough to try to start an independent farming business.  [*See id.*, ¶¶ (59)-(60), (75)-(80).]

Mr. de Rezende's arrest on February 23, 2005 abruptly ended his American dream.  On that day, at the request of Alair de Oliveira, he accompanied Alair and another Brazilian gentleman named Warley de Oliveira, whom he had never previously met, to a hotel in Somerville, Massachusetts for the purpose of showing a fourth individual (who turned out to be a confidential government informant) how to use computer software to make false identification documents.  Mr. de Rezende's demonstration of the software was observed and videotaped by

ICE agents, and he, Alair and Warley were all arrested as the demonstration was about to end. [*Id.*, ¶¶ (22)-(24), (26).]

Of the three persons arrested on February 23, 2005, only Mr. de Rezende was charged in connection with the incident. Warley was charged with immigration and naturalization offenses that had occurred prior to February 23, and Alair was simply deported. After being charged, Mr. de Rezende promptly accepted responsibility for his offense, and pled guilty to a one count possession Information. [*Id.*, ¶¶ (25)-(26), (29), (39).]

Mr. de Rezende knows that what he did was wrong, and he has already been severely punished. He has been incarcerated for the first time in his life, and faces deportation regardless of his ultimate sentence. He has also suffered great shame and humiliation, as evidenced by his having virtually begged the Pre-trial Officer who first interviewed him not to mention his arrest to his elderly parents. To paraphrase Mr. de Rezende: "If you need to call someone, call my wife, call my brother – anyone but my parents."

## REASONS FOR SENTENCING RECOMMENDATION

### A.    The Section 3553(a) Factors

Since the Supreme Court's landmark decision in *United States v. Booker* and *United States v. Fanfan,* 125 S. Ct. 738 (2005), it has been incumbent upon district courts to consider all of the sentencing factors listed in 18 U.S.C. § 3553(a), and not just the Sentencing Guidelines, in determining an appropriate and "reasonable" sentence. Here, all of the applicable § 3553(a) factors, including the Sentencing Guidelines as explained below, support a sentence for Mr. de Rezende of no incarceration, and certainly no incarceration beyond the six weeks that Mr. de Rezende will have already served as of the date of sentencing.

5

  *i. "Nature and Circumstances of the Offense," 18 U.S.C. § 3553(a)(1)* – The offense of conviction was one of non-violence. It was a simple possession crime. No one was harmed. And defendant did not profit in the slightest. It was not the sort of crime that in and of itself requires a sentence of incarceration. And there is nothing about the circumstances of the offense that suggests otherwise. In fact, the offense occurred under circumstances arranged by two individuals -- a government informant and Warley de Oliveira – neither of whom Mr. de Rezende had ever met or spoken with prior to February 23, 2005, the date of the offense. [PSR, ¶¶ (21), (26).] Obviously Mr. de Rezende participated in the crime, and bears and accepts full responsibility for his actions, but the circumstances under which the crime occurred were not of his making. He was brought to the scene by others.

  *ii. "History and Characteristics of Defendant," 18 U.S.C. § 3553(a)(1)* – Defendant is neither a violent nor dangerous man. He broke the law by coming to the U.S. illegally, and he obviously committed the offense of conviction. But he is not a criminal. His motivations for coming to this country were good, and he has already paid and will continue to pay for the aberrant event that has brought him before this Court. Mr. de Rezende is a good, decent, hard-working family man, who is beloved and/or trusted by the teachers and employers with whom he has had substantive involvement in the States. *See*, *e.g.*, PSR, ¶¶ (75)-(75B), (77). Just ask his former supervisor at Dunkin Donuts who promoted him to Shift Leader or his English language teachers who continue to enthusiastically support their "model student." *Id.* Mr. de Rezende is not the sort of "criminal" who needs or would otherwise benefit from a term of incarceration.

6

  *iii. "Need for the Sentence Imposed to Reflect the Seriousness of the Crime, to Promote Respect for the Law, and to Provide Just Punishment for the Offense," 18 U.S.C. § 3553(a)(2)(A)* – Trafficking in software that can make high quality fake identification documents is a serious offense, and if an individual sells fraudulent identification documents to bad people that is even worse. But these offenses are not the offense of conviction. Mr. de Rezende was never accused and did not plead guilty to any trafficking offense. The crime for which he will be sentenced this week was a possession offense. Mr. de Rezende's crime hurt no one, and he received nothing for it. A sentence of incarceration (beyond the six weeks Mr. de Rezende will have already served by the time of his sentencing hearing) would exaggerate the seriousness of Mr. de Rezende's actual crime of conviction.

  Here, as properly measured by the Guidelines, Mr. de Rezende's potential sentence would fall within Zone A of the sentencing grid, with a sentencing range of 0-6 months, *i.e.,* no incarceration would be required. *See* § 2 *infra* (discussing Sentencing Guidelines). Under the Guidelines calculation done by the Probation Office and the government, Mr. de Rezende's sentence would fall in Zone B, with an imprisonment range of 4-10 months, and with the government obligated, under the terms of Mr. de Rezende's plea agreement, to recommend a sentence of no more than the 4 months incarceration. [PSR, ¶ (40); Plea Agreement at ¶¶ 3-4.][2]

---

[2]  Apparently, Warley de Oliveira is now "cooperating" with the government. In a recent discovery letter, the government informed undersigned counsel that it has "extended to [Warley] the possibility of a reduction in the sentence that the government may ultimately advocate should [Warley] be found guilty of the offense to which he is charged, in exchange for his truthful testimony in this matter [against Mr. de Rezende]." Warley has given the government a proffer, and the ICE agent's report of the proffer has been shared with the Probation Office, which has, in turn, used the report as the basis for a "Supplement to the Presentence Report." In the Supplement, the Probation Office observes that if Warley is found "to be credible," Mr. de Rezende would not be entitled to a 2 level reduction for acceptance of responsibility. [Supp. PSR, ¶¶ (123), (133).] The Supplement further observes that if Warley is found "to be credible," Mr. de Rezende's base offense level under the Guidelines of 11 would have to be enhanced by 2 levels for obstruction of justice and 3 levels for certain "relevant conduct." [*Id.*, ¶¶ (122), (128), (131).] In sum, the Supplement concludes that if Warley is found "to be credible," Mr. de Rezende would no longer find himself in the Zone B Guideline range; instead,

In the ordinary course (*i.e.,* if this case did not involve an illegal alien), a Zone B sentence could be "split," with half the time being served in prison and half in community confinement or home detention. *See* U.S.S.G. § 5C1.1(c)(2). In the case of a 4 month Zone B sentence, like the one the government will recommend here, that would mean two months incarceration. The difference between a two month sentence of incarceration and the six weeks Mr. de Rezende will have already served when he is sentenced is relatively *de minimis*. Certainly, a two month term of incarceration is not sufficiently greater than six weeks to constitute a more just punishment, or promote greater respect for law, or better reflect the seriousness of the offense of conviction than the lesser sentence. The punishment defendant proposes – six weeks incarceration (*i.e.,* time served) and prompt deportation – combined with Mr. de Rezende's changed status (he is now a convicted felon, and he will soon be a once-deported unlawful alien)[3] is more than sufficient "to

---

    he would have a total offense level of 16, with an imprisonment range of 21-27 months. [*Id.*, ¶ (134).] Several responses to the Probation Office's supplemental report are in order:

1. The United States Attorney's Office continues to hold the position that Mr. de Rezende's total offense level is 9, with an imprisonment range of 4-10 months. The USAO recognizes that Mr. de Rezende has accepted responsibility for the offense of conviction. The USAO intends to recommend a sentence of 4 months incarceration, *i.e.*, the low end of what it regards as the applicable Guidelines range.

2. Warley, who is working to reduce his own exposure, and who admittedly never met nor spoke with Mr. de Rezende before February 23, 2005, is not credible.

3. A finding by the Court that Warley was credible, would not be sufficient to enhance Mr. de Rezende's sentence. Mr. de Rezende has not pled guilty to either obstruction of justice or to any "relevant conduct" such as allegedly having had involvement in Warley's pre-February 23, 2005 criminal conduct (*i.e.*, the crimes for which Warley, and not de Rezende, has been indicted – *see* Indictment in *U.S. v. Warley G. Oliveira, a/k/a Arley*, 05 CR 10028RWZ, charging Warley with § 1028(a)(2) offenses which allegedly occurred on 9/21/04, 10/26/04, and 3/13/05). Under *United States v. Booker* and *United States v. Fanfan*, 125 S.Ct. 738, 756 (2005), "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." Fortunately, here, a jury trial on Warley's non-credible assertions should not be necessary.

[3]    As a once-convicted felon and a once-convicted unlawful alien, Mr. de Rezende would face substantially more serious penalties should he ever again re-enter the U.S. or engage in conduct similar to the offense of conviction. *See, e.g.,* 8 U.S.C. § 1326; U.S.S.G. §§ 2L2.1(b)(4) and 2L2.2(b)(1) & (2).

8

reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense" within the meaning of § 3553(a)(2)(A).[4]

*iv. "Need for the Sentence Imposed to Afford Adequate Deterrence to Criminal Conduct," 18 U.S.C. § 3553(a)(2)(B)* – There can be little question that the sentence proposed by defendant would adequately serve the interests of both specific and general deterrence. There are at least three reasons to believe the proposed sentence will specifically deter Mr. de Rezende from future criminal conduct. First, Mr. de Rezende has no prior criminal record. The six weeks he will have spent in prison constitute his first ever experience behind bars. Six weeks is enough. He does not need additional prison-time to know that he does not want to return. Six weeks, indeed six days, in prison for one like Mr. de Rezende with no prior jail experience has a greater deterrent effect than six years for a recidivist or anyone else with an extensive criminal record. *See*, *e.g.*, *Solem v. Helm*, 463 U.S. 277, 298 (1983) ("a State is justified in punishing a recidivist more severely than it punishes a first offender"). Second, Mr. de Rezende is going to be deported. Thus, the chance of him committing another crime in the U.S. is at best remote. Third, Mr. de Rezende knows that should he ever unlawfully return to the United States and commit another crime, even if only another possession crime, he will face substantial jail time.

---

[4] As noted above, defendant has offered to stipulate to deportation. *See supra* at fn. 1. Prior to *Booker/Fanfan*, at least one court concluded that under the Guidelines, district courts had the authority to depart downward based on a defendant's offer to stipulate to deportation. *See*, *e.g.*, *United States v. Rodriguez-Lopez*, 198 F.3d 773 (9th Cir. 1999). The First Circuit did not agree. *See*, *e.g.*, *United States v. Clase-Espinal*, 115 F.3d 1054 (1st Cir. 1997) (holding that in the absence of a colorable, non-frivolous defense to deportation, there is no basis to grant a downward department for stipulating to deportation). *Booker/Fanfan* has changed the sentencing landscape. Although Mr. de Rezende's offer to stipulate to deportation was not a ground for downward departure within the First Circuit prior to *Booker/Fanfan*, there is no reason why the offer may not be taken into account now as a factor under 18 U.S.C. § 3553. Mr. de Rezende requests that it be taken into account. The offer to stipulate to deportation is pertinent to the Court's § 3553(a) mandate to "impose a sentence sufficient, but not greater than necessary." The offer is also relevant to the "characteristics of the defendant under § 3553(a)(1), the "just" quality of defendant's proposed punishment under § 3553(a)(2)(A), and factors of "protect[ing] the public from further crimes of the defendant," and the "kinds of sentences available" under §§ 3553(a)(2)(C) and 3553(a)(3) respectively.

...

*See*, *e.g.*, 8 U.S.C. § 1326; U.S.S.G. § 2L2.1(b)(4). This prospect, in and of itself, serves a substantial deterrent function.

As for the public interest in general deterrence, it will be served by sentencing a first time offender, who has committed nothing more than a possession offense, to six weeks of jail time and then deporting him. Other unlawful aliens who might consider committing a crime similar to the instant offense will undoubtedly be deterred if they learn that even mere possession of computer software designed to make false identification documents can and will result in arrest, imprisonment and deportation. From a general deterrence perspective, nothing more is necessary.

v. *"Need for the Sentence Imposed to Protect the Public from further Crimes of the Defendant," 18 U.S.C. § 3553(a)(2)(C)* – Mr. de Rezende's deportation will fully "protect the public from further crimes of the defendant."

vi. *"Need for the Sentence Imposed to Provide the Defendant with Needed Educational or Vocational Training, Medical Care, or Other Correctional Treatment in the Most Effective Manner," 18 U.S.C. § 3553(a)(2)(D)* – This factor is not applicable to the current case. To the extent it is even marginally applicable it weighs in favor of immediate deportation: Mr. de Rezende has had a heart condition since he was a young boy, and he occasionally requires treatment for high blood pressure. [PSR, ¶¶ (65)-(66).] Obviously, being back in Brazil where he could be treated, if need be, by Brazilian physicians who are familiar with his condition and who speak his language, would afford Mr. de Rezende more effective medical care than he would receive in a United States prison.

*vii. "Need to Avoid Unwarranted Sentence Disparities Among Defendants With Similar Records who have been Found Guilty of Similar Conduct," 18 U.S.C. § 3553(a)(6)* –
Mr. de Rezende has already received an unwarrantedly higher sentence than persons who are similarly – indeed, almost identically – situated – namely, the two individuals who were arrested along with Mr. de Rezende on February 23, 2005. Of these two individuals, one (Alair de Oliveira) was deported without being charged, while the other (Warley de Oliveira) was charged with other crimes, but was not charged with any crime concerning the events of February 23rd. *See* PSR, ¶¶ (25)-(26). Under these circumstances, for Mr. de Rezende to have been charged was unfair and unwarrantedly disparate. For him now to receive additional prison time, over and above the time he has already served, would be even more patently unfair and violative of the dictate of § 3553(a)(6). *See also* U.S.S.G. § 1A1.1, Commentary, Ch. 1, Pt. 1, § 3 (In enacting the Comprehensive Crime Control Act of 1984, Congress sought, among other things, "uniformity in sentencing by narrowing the wide disparity in sentences imposed by different federal courts for similar criminal conduct by similar offenders").

*viii. "Need to Provide Restitution to Any Victims of the Offense," 18 U.S.C. § 3553(a)(7)* – There were no victims of the offense of conviction. [PSR, ¶¶ (27), (36), (112).]

**2.     The Sentencing Guidelines**

The Probation Department has determined that U.S.S.G. § 2L2.1 is the most applicable guideline for the offense of conviction. [PSR, ¶ (31).] Probation has further found that under the Guidelines there is no appropriate ground for a downward departure, *id.* at ¶ (116), and has determined that Mr. de Rezende's total offense level should be 9, with a sentencing range of 4-10 months, *id.* at ¶ (40). *But see* Supplement to PSR, discussed above at fn. 2. Even if all of Probation's Guidelines' calculations and conclusions are correct, per *Booker/Fanfan* and all of

the non-Guideline § 3553(a) factors discussed above, the appropriate and most "reasonable" sentence for Mr. de Rezende would be time served plus prompt deportation. There are, however, several reasons to believe that this same proposed sentence would also be a correct Guidelines sentence.

First, under U.S.S.G. § 2L2.1(b)(1),[5] Mr. de Rezende is entitled to a 3 level reduction from the base offense level of 11 because the offense of conviction "was committed other than for profit." Application Note 1 to U.S.S.G. § 2L2.1 defines "the offense was committed other than for profit" to mean "that there was no payment or expectation of payment for the smuggling, transporting, or harboring of any of the unlawful aliens." Here, there is no dispute that "no payment" was made for the computer software demonstrated by Mr. de Rezende on February 23, 2005. Furthermore, to the extent there may have been an expectation of payment, there is no dispute that the expectation was *not* tied to the "smuggling, transporting, or harboring" of any unlawful alien.[6] Accordingly, the 3 level reduction of § 2L2.1(b)(1) is

---

[5] In his initial objections and responses to the draft PSR, Mr. de Rezende objected to the use of § 2L2.1, as opposed to § 2L2.2, as the most applicable guideline for the offense of conviction. *See* Objection #4. In addition, Mr. de Rezende objected to the PSR's failure to decrease his offense level by 2 or 3 points pursuant to U.S.S.G. § 3B1.2 (Mitigating Role) because of his minor or lesser role in the offense. *See* Objection #6. Upon further reflection, Mr. de Rezende has decided to withdraw these two objections to Probation's Guidelines' calculations.

[6] In responding to defendant's Objection #6, the Probation Office states that it "understands the defendant's position to be that the government has not established that Rodrigues de Rezende knew that Warley was selling the computer software to the CS, and that the government has not proven that Rodrigues de Rezende had any expectation that he would be paid for demonstrating the use of the computer software." *See* Addendum to PSR, Probation Officer's Response to Obj. #6. The Probation Office misapprehends defendant's position. For purposes of his argument in favor of the 3 level reduction set forth in § 2L2.1(b)(1), Mr. de Rezende acknowledges that he knew, or could have at least surmised, that "Warley was selling the computer software to the CS," and he concedes that he had an expectation of payment for demonstrating the use of the computer software. Neither Mr. de Rezende's presumed knowledge of Warley's motives nor his own presumed expectation of payment defeats his entitlement to a 3 level reduction under § 2L2.1(b)(1). The point is that payment was not received, and whatever expectation of payment there may have been, that expectation was not related to "smuggling, transporting, or harboring." Without the latter link, and without any payment having been made, Mr. de Rezende is entitled to the 3 level reduction of § 2L2.1(b)(1).

appropriate.7 With this 3 level reduction and the 2 level reduction to which Mr. de Rezende is entitled for acceptance of responsibility – *see* PSR, ¶ (39) -- Mr. de Rezende's aggregate offense level would be 6, with a sentencing range of 0-6 months. At level 6, defendant's recommended sentence of time served (*i.e.*, six weeks) would be an appropriate Guidelines sentence.

Second, an "aberrant behavior" downward departure would be appropriate for Mr. de Rezende under U.S.S.G. § 5K2.20. Per § 5K2.20(b), the "court may depart downward . . . only if the defendant committed a single occurrence or single criminal transaction that (1) was committed without significant planning; (2) was of limited duration; and (3) represents a marked deviation by the defendant from an otherwise law-abiding life." Here, the crime for which Mr. de Rezende has been charged was a stand-alone possession offense, which started and ended on February 23, 2005. According to information supplied by the government to Probation, the "planning" for the crime of conviction occurred in two or three conversations between the government's informant and Warley de Oliveira between February 14 and 23, 2005. *See* PSR, ¶ (21). The planning was far from "significant." Furthermore, the crime itself, once it occurred, lasted less than one hour. *Id.* at ¶ (23). And finally the crime, for which Mr. de Rezende has accepted responsibility and pled guilty, was a marked deviation from his

---

7   Notably, the definition of the phrase "the offense was committed other than for profit" has not always been tied to "smuggling, transporting, or harboring." Until 1997, U.S.S.G. § 2L2.1(b)(1) did not reference "smuggling, transporting or harboring." Instead, the provision provided: "If the defendant committed the offense other than for profit, decrease by 3 levels." The accompanying pre-1997 Application Notes defined "for profit" to mean "for financial gain or commercial advantage." In 1997, § 2L2.1(b)(1) was twice amended, first in May and then in November to its current form. In connection with the 1997 amendments, the definition of the "for profit" phrase as used in the provision was changed, and was for the first time specifically tied to "smuggling, transporting, or harboring." *See* U.S.S.G., Appendix C, amendments 544 & 563. Given the current definition, Mr. de Rezende is entitled to a 3 level reduction under § 2L2.1(b)(1).

otherwise law-abiding life. *See*, *e.g.*, PSR, ¶¶ (42)-(47).[8] Thus, the Court has discretion under U.S.S.G. § 5K2.20 to depart downward, and as part of a strict Guidelines analysis, Mr. de Rezende would request that the Court do just that. The downward departure need not be large to be effective. Indeed, a downward departure of just one level from Probation's Guidelines analysis would place Mr. de Rezende into Zone A and make him eligible for a Guidelines sentence of time served.

## CONCLUSION

If consideration of Mr. de Rezende's sentence started and ended with the Guidelines, time served would be an appropriate and reasonable sentence. Mr. de Rezende's "offense was committed other than for profit" within the meaning of U.S.S.G. § 2L2.1(b)(1), and he should be entitled to an "aberrant behavior" downward departure under § 5K2.20 of the Guidelines. Under the Guidelines, Mr. de Rezende's total offense level should be 6 or lower (with a downward departure), and since he has no criminal history his sentencing range should be 0-6 months, with a sentence of six weeks, *i.e.*, time served, falling squarely within the range.

Even if Mr. de Rezende's Guidelines arguments are rejected, and the Court agrees with Probation's original finding (PSR, ¶ (40)) that 4-10 months is the appropriate Guidelines range, a sentence of time served would still be the correct and "reasonable" sentence. Under the teachings of *Booker/Fanfan*, the Guidelines do not supply the final word in sentencing. Rather, courts must also consider the other sentencing factors outlined in 18 U.S.C. § 3553(a). Here, all

---

[8]   Defendant acknowledges that he entered the United States illegally and that he used a false social security card in order to obtain employment while in the United States. *See* PSR, ¶¶ (60), (62), (63). These two other illegalities – both of which were motivated by the well-intentioned desire to help defendant's family – do not render defendant ineligible for an aberrant behavior downward departure. Nor do they represent a "marked deviation by the defendant from an otherwise law-abiding life." If they did, then no illegal alien who pleads or is found guilty of any substantive felony offense could ever be eligible for an aberrant behavior downward departure. This was not the law under the mandatory Guidelines regime, and it unquestionably is not the law in the post-*Booker/Fanfan* world.

of those factors weigh heavily against an order of any further incarceration for Mr. de Rezende. This good, decent man has already been adequately punished. Indeed, the punishment he has already received has been harsher than that of either of the individuals who were arrested alongside him on February 23, 2005, neither of whom has even been charged for the conduct of February 23. Furthermore, the proposed sentence will adequately promote respect for the law and deter others in Mr. de Rezende's position from violating the laws pertaining to the making of false identification documents. The time Mr. de Rezende has served in prison is sufficient. No additional incarceration is necessary. Mr. de Rezende should be sentenced to time served and promptly deported from the United States. Any harsher sentence would be unfair and would not serve any legitimate penal interest.

Respectfully submitted,
JOSE RODRIGUES DE REZENDE
By his attorneys,

        /s/ David J. Apfel
David J. Apfel (BBO #551139)
GOODWIN PROCTER LLP
Exchange Place
Boston, MA 02109-2881
617-570-1970

Dated: April 5, 2005

**CERTIFICATE OF SERVICE**

      I, David J. Apfel, hereby certify that, on April 5, 2005, I caused a true and accurate copy of the above Sentencing Memorandum to be served on the government by e-mail and first class mail to Paul R. Moore, Assistant U.S. Attorney, John Joseph Moakley United States Courthouse, 1 Courthouse Way, Suite 9200, Boston, Massachusetts 02210. Simultaneously, a true and accurate copy of the Sentencing Memorandum was also served upon U.S. Probation Officer Susan Walls by e-mail and first class mail.

                                          /s/ David J. Apfel
                                          David J. Apfel

LIBA/1522450.1